UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLAYTON C.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. C19-98-BAT

**ORDER**

Plaintiff Clayton C. seeks review of the denial of his application for Supplemental Security Income. He contends the ALJ improperly (1) found substance use to be material and rejected opinions of treating and examining providers, (2) presented a flawed RFC to the vocational expert, and (3) rejected plaintiff's testimony and lay witness statements. Dkt. 16. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 42 years old, has a GED, and has worked as a machine oiler, fast food worker, sales clerk, small engine mechanic, and apartment house manager. Tr. 52, 81-82, 301. In July 2015, he applied for benefits, alleging disability as of September 2013. Tr. 301. After his application was denied initially and on reconsideration, the ALJ conducted a hearing and, on February 2, 2018, issued a decision finding plaintiff not disabled. Tr. 15-37. The Appeals

ORDER - 1

Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process and the framework for evaluating the effects of substance use,[1] the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date; he had the following severe impairments: right toe amputations, spinal impairment, arthritis, affective disorder, anxiety disorder, personality disorder, and substance use disorder; and, when including the effects of substance use, these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 18-19. The ALJ found that including the substance use disorder, plaintiff had the residual functional capacity to perform light work with additional physical and mental limitations, including that he was unable to sustain work forty hours a week on a regular and consistent basis and would miss at least two days of work per month. Tr. 21. The ALJ found that plaintiff was unable to perform any past relevant work. Tr. 23. The ALJ found that including the substance use disorder, there were no jobs in the national economy that plaintiff could perform. Tr. 25.

The ALJ found that without the effects of his substance use disorder, plaintiff would continue to have severe impairments and these severe impairments would not meet or equal a listed impairment. Tr. 25. The ALJ found that without the effects of his active substance use, plaintiff would have the residual functional capacity to perform light work with largely the same additional physical and mental limitations as when his substance use disorder was included, except for the limitation that he was unable to sustain work forty hours a week on a regular and

---

[1] 20 C.F.R. §§ 416.920, 416.935.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

consistent basis and would miss at least two days of work per month, which the ALJ did not include in this RFC finding. Tr. 26. The ALJ found that if plaintiff stopped the substance use, there would be a significant number of jobs in the national economy that he could perform. Tr. 36. The ALJ found that plaintiff's substance use disorder was a contributing factor material to the determination of disability because plaintiff would not be disabled if he stopped the substance use and, for this reason, plaintiff was not disabled. Tr. 36.

## DISCUSSION

### A. Materiality of substance use

Plaintiff argues that the ALJ erred in finding that plaintiff's substance use was a material factor contributing to his disability, arguing that (1) the ALJ failed to provide clear and convincing reasons to reject uncontradicted opinions of treating and examining physicians that plaintiff has marked limitations in ability to complete a normal workday, perform effectively in a work setting, or adapt to changes in a routine work setting; (2) there is minimal evidence of substance use by plaintiff; and (3) the ALJ failed to separate out and cite to any evidence that plaintiff would be able to complete a normal workday, perform effectively in a work setting, or adapt to changes in a routine work setting without substance use. Dkt. 16 at 2. The court addresses each argument in turn.

*1. Medical opinions*

The ALJ gave weight to the opinions of Dr. Widlan, Dr. Cavanee, Dr. Andersen, Dr. Mashburn, and ARNP Paluga, but "only in the context of the claimant's functioning when including the effects of his substance use disorder." Tr. 23. The ALJ discounted these opinions when evaluating plaintiff's functioning without the effects of substance use. Tr. 31-34. Plaintiff argues that the ALJ erred in evaluating these medical opinions.

ORDER - 3

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

a. Dr. Widlan

Dr. Widlan examined plaintiff in November 2014. He opined that plaintiff would have marked limitations in the ability to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms, along with numerous other moderate limitations. Tr. 438. Dr. Widlan noted that plaintiff reported no history of drug or alcohol abuse and no chemical dependency treatment or legal difficulties; he opined that plaintiff's impairments were not primarily the result of alcohol or drug use within the last 60 days and that they would persist following 60 days of sobriety. Tr. 436, 438.

The ALJ gave Dr. Widlan's opinion minimal weight in regard to plaintiff's functioning without the effects of his substance use disorder since his application date. Tr. 31. The ALJ noted that Dr. Widlan's assessment occurred nine months before plaintiff's application date, at a time when he had no mental health care besides case management. *Id.* The ALJ found that plaintiff's functioning improved when he began complying with psychiatric medication after his application date. *Id.* The ALJ also found that plaintiff told Dr. Widlan that he had no history of drug or alcohol abuse and no history of legal difficulties or chemical dependency treatment, whereas a prior ALJ decision established that he has a history of alcohol dependence and marijuana use disorder with unreliable self-reporting of his substance use, and he was convicted of burglary in 1999 and otherwise has an abundance of criminal charges. Tr. 31. And the ALJ found that Dr. Widlan found marginal grooming, flat affect, impaired memory, and impaired judgment, whereas in treatment settings plaintiff typically exhibited adequate grooming, appropriate affect, unimpaired memory, and intact judgment. Tr. 31-32. The ALJ found that these inconsistencies indicate that Dr. Widlan's assessment is not accurate, at least not concerning plaintiff's functioning without the effects of his substance use disorder. Tr. 32.

Plaintiff argues that there was no evidence that plaintiff was under the influence of alcohol or drugs at the time of Dr. Widlan's evaluation, and Dr. Widlan opined that plaintiff's impairments would persist following 60 days of sobriety, so plaintiff's non-disclosure would not have affected Dr. Widlan's professional opinion. Dkt. 16 at 3. The court disagrees. Even if plaintiff was not under the influence of drugs or alcohol during the examination, his omission of his history of drug and alcohol abuse left Dr. Widlan unaware of information that could have affected his assessment of the nature and severity of plaintiff's impairments and his functional limitations. Plaintiff also denied legal difficulties and chemical dependency treatment, when the

record demonstrates that he experienced both. An ALJ may properly reject a treating physician's opinion that is inconsistent with the record and not supported by objective evidence. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). The information plaintiff gave Dr. Widlan was inconsistent with the evidence in the record, and Dr. Widlan based his opinion on that inconsistent and inaccurate information. This was a specific and legitimate reason to reject the opinion.

The ALJ gave other reasons for discounting Dr. Widlan's opinion. But even if these reasons were invalid, any error would be inconsequential to the decision. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (an error is harmless where it is inconsequential to the ALJ's ultimate nondisability determination). The ALJ did not validly gave Dr. Widlan's opinion minimal weight as to plaintiff's functioning without the effects of his substance use disorder.

      b.      Dr. Cavanee

Dr. Cavanee examined plaintiff in April 2015. He opined that plaintiff had marked limitations in the ability to follow detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual, adapt to changes in a routine work setting, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently, along with moderate limitations in all other areas. Tr. 450. Dr. Cavanee noted that plaintiff stated that he has never had any issues in the area of substance abuse. Tr. 448. Dr. Cavanee opined that plaintiff's impairments were not primarily the result of alcohol or drug use within the last 60 days and that they would persist following 60 days of sobriety. Tr. 451.

The ALJ gave Dr. Cavanee's opinion minimal weight in regard to plaintiff's functioning without the effects of his substance use disorder. Tr. 32. The ALJ noted that plaintiff again denied ever having any issues with substance abuse, whereas the record shows that he has an established history of substance abuse. *Id.* The ALJ also noted that plaintiff told Dr. Cavanee that he experienced severe daily depression and anxiety despite ongoing psychiatric medication but reported when starting mental health treatment in September 2013 that his only problem was that he was homeless, and his mental health counseling between May 2015 and September 2015 did not mention depression or anxiety. *Id.* And the ALJ found that while Dr. Cavanee noted poor grooming, psychomotor retardation, tangential and disorganized thought process, depressed affect, cooperative but irritated behavior, impaired memory, impaired concentration, and impaired judgment, plaintiff generally did not exhibit these characteristics in treatment settings. *Id.* The ALJ found that these inconsistencies significantly detracted from the accuracy of Dr. Cavanee's assessment, at least in regard to plaintiff's functioning without the effects of his substance use disorder, and were inconsistent with plaintiff's ability to persist with knitting projects and to tolerate a variety of social settings. *Id.*

As with Dr. Widlan, plaintiff gave Dr. Cavanee information that was inconsistent with the evidence of his substance use in the record. Plaintiff again asserts that because he was not under the influence of substances at the time of the evaluation and Dr. Cavanee opined that plaintiff's impairments were not the result of alcohol or drug use within the last year, his nondisclosure would not have affected Dr. Cavanee's opinion. Dkt. 16 at 4. But, again, Dr. Cavanee based his opinion on the incomplete and inaccurate information plaintiff provided. This was a valid reason for the ALJ to reject the opinion. The ALJ did not err in giving Dr. Cavanee's

opinion minimal weight as to plaintiff's functioning without the effects of his substance use disorder.

c.    Dr. Andersen

Dr. Andersen examined plaintiff in October 2015. Tr. 467-73. She opined that plaintiff would likely not have difficulty performing simple instructions but would likely have major challenges attending a job or persisting with tasks and would likely have workplace absences due to increased anxiety in a workplace. Tr. 473.

The ALJ gave minimal weight to Dr. Andersen's opinion in regard to plaintiff's functioning without the effects of substance use. Tr. 32. The ALJ found that Dr. Andersen noted that plaintiff did well on cognitive testing despite rejecting the need for psychiatric medication. Tr. 32. The ALJ found that plaintiff's general disregard for mental health care was incompatible with his allegations of psychological disability from his non-substance related mental impairments. Tr. 32-33. The ALJ found that plaintiff denied regular alcohol use during the examination, but also said that he had recently been arrested for shoplifting a bottle of wine. Tr. 33. The ALJ noted that Dr. Andersen did not diagnose a substance use disorder, but his primary diagnosis in August 2015 was alcohol dependence, treatment records from September 2015 noted active alcohol dependency, and shortly after Dr. Andersen's evaluation a counselor referred plaintiff to the emergency room for alcohol withdrawal. *Id.* And the ALJ found that plaintiff's presentation to Dr. Andersen, as in other state agency evaluations, was notably different from his presentation in treatment settings. Tr. 33. The ALJ therefore gave greater weight to the more definite psychological assessments that were consistent with the overall record. Tr. 33.

Plaintiff argues that the fact that plaintiff was diagnosed with a mild substance use disorder at the center where he was required to undergo substance use counseling "is not surprising" and is not a clear and convincing reason to discredit Dr. Andersen. Dkt. 16 at 5. But Dr. Andersen's opinion, which does not include a finding of substance use disorder, is inconsistent with the treatment records documenting ongoing alcohol dependence as plaintiff's primary diagnosis. An ALJ may give less weight to an opinion that is inconsistent with other evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). This was a specific and legitimate reason for the ALJ to give little weight to Dr. Andersen's opinion. The ALJ did nor err in evaluating the opinion.

        d.        Dr. Mashburn

Dr. Mashburn examined plaintiff in April 2017. Tr. 563-66. He opined that plaintiff had marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual, ask simple questions or request assistance, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal workday and work week without interruptions from psychologically based symptoms; he opined that plaintiff had moderate limitations in most other areas. Tr. 565.

The ALJ gave Dr. Mashburn's opinion minimal weight in regard to plaintiff's functioning without the effects of his substance use disorder. Tr. 33. The ALJ found that Dr. Mashburn's assessment was not based on accurate information according to plaintiff's longitudinal record. The ALJ noted that during Dr. Mashburn's assessment, plaintiff reported suicidal thoughts, displayed frightened behavior, flat affect, poor hygiene, poor eye contact, and impaired memory, whereas in treatment settings since August 2016 plaintiff consistently denied suicidal ideation and exhibited appropriate grooming, pleasant and cooperative behavior, good

eye contact, normal psychomotor activity and normal speech, logical and connected thought process, intact memory, and a lack of cognitive impairment. Tr. 33. The ALJ found that these inconsistencies severely detract from the reliability of Dr. Mashburn's assessment and found other psychological assessments to be consistent with the record as a whole. Tr. 33.

Plaintiff argues that variability in symptoms is not a basis to discredit a doctor's findings, and that the ALJ misrepresented the record in finding inconsistencies with Dr. Mashburn's opinion. Dkt. 16 at 6. However, the ALJ did not merely identify varying reports of symptoms. Rather, the ALJ identified a series of treatment notes from August 2016 through July 2017, which covers the time of Dr. Mashburn's April 2017 assessment, where plaintiff consistently denied suicidal ideation and the treating providers consistently noted the normal presentation described above. Tr. 588-640. The ALJ could reasonably find that Dr. Mashburn's opinion was inconsistent with this evidence. This was a valid reason for the ALJ to discount Dr. Mashburn's opinion. *See Batson*, 359 F.3d at 1195 (ALJ may give less weight to an opinion that is inconsistent with other evidence in the record). The ALJ did nor err in assessing this opinion.

e. ARNP Paluga

Treating ARNP Paluga[3] opined in July 2017 that plaintiff had moderate to marked limitations in the ability to maintain concentration, maintain regular attendance, sustain a routine, work in proximity to others, complete a normal workday, interact appropriately with the public, ask simple questions, get along with coworkers, maintain appropriate behavior, or respond appropriately to changes in his work setting. Tr. 585-87. In August 2017, Ms. Paluga opined that plaintiff had marked restrictions in activities of daily living and maintaining social functioning,

---

[3] At the time plaintiff filed his claim, an ARNP was not an "acceptable medical source." The ALJ therefore had to give only a germane reason, supported by the evidence, for discounting Ms. Paluga's opinions. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

ORDER - 10

moderate restrictions in maintaining concentration, persistence, or pace, and four or more episodes of decompensation within a 12-month period, each of at least two weeks duration; she opined that he would miss more than four days of work per month. Tr. 641-44.

The ALJ gave minimal weight to Ms. Paluga's assessments when determining plaintiff's functioning without the effects of his substance use disorder. Tr. 34. The ALJ found that neither assessment referred to any objective evidence, but instead relied solely on plaintiff's own reporting of depression and anxiety, which the ALJ had found to be unreliable elsewhere in the decision. *Id.* The ALJ also found that plaintiff had reported to Ms. Paluga in August 2016 that his last alcohol use had been in July 2015, but in August 2015 he reported he was still drinking, and treatment records from September 2015 noted active alcohol dependency. *Id.* The ALJ found that Ms. Paluga's assessment was inconsistent with her examination findings, which consistently found appropriate grooming, pleasant and cooperative behavior, good eye contact, normal psychomotor activity, normal speech, logical and connected thought process, intact memory, and a lack of cognitive impairment. *Id.* And the ALJ found that plaintiff had no documented or reported instances of emergency mental health care to support a finding of a single episode of decompensation. *Id.* The ALJ therefore gave greater weight to other psychological assessments that were consistent with the overall evidence. *Id.*

Plaintiff argues that the ALJ improperly rejected Ms. Paluga's opinion as relying solely on plaintiff's self-reporting when she had observed plaintiff monthly for more than a year and performed objective testing, and that the ALJ misconstrued the record in finding that Ms. Paluga's opinion was inconsistent with treatment records. Dkt. 16 at 7. Plaintiff does not address the ALJ's finding that Ms. Paluga opined that he had had four or more episodes of decompensation, each lasting two weeks or more, over the course of a year, when the record

contains no documented or reported instances of even a single episode of decompensation. This inconsistency was a germane reason to discount Ms. Paluga's opinions. The ALJ did not err in evaluating Ms. Paluga's opinions.

   2.   *Evidence of substance use*

Plaintiff argues that the ALJ's finding of materiality of substance use is not supported by substantial evidence because there is minimal evidence of substance use and the ALJ mischaracterized the evidence that exists. Dkt. 16 at 9. He asserts that he consistently maintained throughout the record that he drinks only occasionally; he engaged in drug and alcohol treatment because he was required to after a DUI suspended sentence, which he received because he did not have the wherewithal to fight the DUI charge; in treatment his diagnosis was characterized as mild and his random urine tests were clean; and the ALJ misinterpreted references to alcohol use in the record. *Id.*

Plaintiff presents the evidence of his substance use and treatment in the light most favorable to him. But the court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ noted the following examples of substance use, in addition to evidence already discussed in this decision: a prior ALJ decision referred to diagnoses of alcohol dependence and marijuana use disorder with unreliable self-reporting of his substance use (Tr. 147-50); plaintiff testified that he tended to "medicate" himself with alcohol, using it to help him sleep at night (Tr. 55); he reported to a counselor in May 2015 that he had been drinking again and had been taken to the hospital by the police because some people had reported him for being "freaky" (Tr. 507); he reported to the same counselor in June 2015 that he had been drinking again and was not interested in taking psychiatric medication for that reason (Tr. 505); he reported in August 2015 that he was still

drinking alcohol while contemplating change and felt he needed more external motivation and interventions to quit drinking (Tr. 492); he had a positive alcohol screen in August 2015 (Tr. 578); and in October 2015 he alternatively alleged that he had last used alcohol when he was 18 or in July 2015 (Tr. 578). This is substantial evidence to support the ALJ's finding of materiality of substance use.

### 3. *Evidence of impairments without substance use*

Plaintiff argues that the ALJ erred by adopting the opinions of Dr. Widlan, Dr. Cavanee, Dr. Andersen, Dr. Mashburn, and ARNP Paluga to find him disabled with the effects of substance abuse but rejecting these very same opinions to find him not disabled without the effects of substance abuse. Dkt. 16 at 10-11. He asserts that this is illogical and harmful legal error. *Id.* Plaintiff restates the two-part test for evaluating the materiality of drug and alcohol use and reasserts his argument that the ALJ misevaluated the opinions and mischaracterized the evidence. The court has found that the ALJ did not err in evaluating these opinions, and likewise finds no error in the ALJ's determination that these opinions reflect plaintiff's functioning with the effects of substance abuse but not his functioning without those effects.

In sum, the ALJ did not commit harmful legal error in finding plaintiff's substance use was a material factor contributing to his disability and, for this reason, he was not disabled for purposes of receiving disability benefits.

## B. Opinions regarding physical impairments

Plaintiff argues that the ALJ erred in evaluating medical opinions regarding his physical impairments, asserting that the evidence establishes the existence of impairments the ALJ did not discuss and that the ALJ improperly rejected medical opinions without providing reasons. Dkt. 16 at 11-13.

Plaintiff asserts without explanation or citation to the record that the ALJ improperly disregarded the opinion of examining physician Dr. Speckman in favor of opinions non-examining physicians. Dkt. 16 at 12. The court may deem arguments that are unsupported by explanation to be waived. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)). The Court declines to address this argument.

Plaintiff also points to treatment records from Dr. Chancellor and Dr. Sharma. *Id.* at 11-12. In September 2015, Dr. Chancellor found diffuse arthritis in all joints in bilateral upper and lower extremities and in lower back. Tr. 773. Plaintiff reported that his symptoms were aggravated by activity and prolonged sitting and that he was experiencing activity limitation, fatigue, joint swelling, morning stiffness for more than three hours, paresthesia, and weakness. *Id.* In October 2015, Dr. Chancellor noted x-ray findings including degenerative changes in plaintiff's lower back and osteophyte versus loose body in right hip. Tr. 769. In December 2016, Dr. Sharma noted that plaintiff reported ongoing and worsening pain in his back, knee, shoulder, and hip. Tr. 750-51. On examination, Dr. Sharma noted tenderness and decreased range of motion. Tr. 752-53.

Plaintiff argues that these records establish the existence of medically determinable severe impairments that the ALJ did not include in the decision, including hip, knee, and hand impairments, and that these records are medical opinions that the ALJ rejected without giving reasons. Dkt. 16 at 12. With respect to the first argument, the mere existence of an impairment does not establish that it is a medically determinable severe impairment. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A claimant's statement of symptoms alone is not

enough to establish a physical or mental impairment. 20 C.F.R. § 404.1508, 404.1528(a).
Plaintiff points to x-ray results, his reports of symptoms to his providers, and their findings of tenderness and limited range of motion. But this evidence is not enough to establish the existence of medically determinable severe impairments or that the ALJ erred by failing to find them to be such for purposes of a disability claim.

Similarly, although plaintiff characterizes these medical records as medical opinions that the ALJ cannot disregard without comment, the treatment notes do not contain opinions about functional limitations caused by plaintiff's impairments. Rather, they document plaintiff's reports of symptoms and the results of the doctors' examinations. And while the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Merely pointing to treatment records that the ALJ failed to discuss does not establish error. Plaintiff has done nothing more than point to treatment records and assert that the ALJ should have interpreted them as supporting functional limitations they do not contain. Plaintiff has not established that the ALJ erred in evaluating the evidence of his physical impairments.

### C. RFC finding

Plaintiff argues that the ALJ's RFC finding is flawed because there are differences between the RFC with the effects of substance use and the RFC without those effects, as well as differences between the hypothetical presented to the vocational expert at the hearing and the RFC without the effects of substance use in the decision. Dkt. 16 at 14.

The ALJ presented a hypothetical to the VE where the individual "can never crawl or climb ladders, ropes, or scaffolds, and can occasionally perform each of the other postural

movements." Tr. 127. The ALJ found that when the effects of substance use are included, plaintiff "cannot crawl or climb ladders, rope, or scaffolding" and can "occasionally balance, stoop, kneel, crouch, or climb ramps or stairs." Tr. 21. The ALJ found that without the effects of substance use, plaintiff "cannot crawl or climb ramps and stairs," with no other postural limitations. Tr. 26. Thus, the RFC with the effects of substance use includes the same limitations the ALJ included in the hypothetical posed to the VE, but the RFC without the effects of substance use differs from the first two.

Plaintiff points out that the RFC without substance use contains a greater limitation on the use of stairs and ramps than the RFC with substance use, and that the RFC used in the finding of non-disability is not the same as the one presented to the VE at the hearing. Dkt. 16 at 14. But plaintiff fails to explain how these differences amounted to harmful error. Where an RFC finding erroneously excludes postural limitations, the error is harmless if those limitations are irrelevant to the step five finding. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). The court finds that any error here was inconsequential to the ultimate decision and therefore harmless. *Molina*, 674 F.3d at 1122.

Plaintiff further argues that the ALJ's RFC finding was flawed because it did not encompass all his functional limitations and therefore the expert's testimony cannot support the ALJ's finding that Ms. Malloy was not disabled. Dkt. 16 at 15. This argument is based on his previous assignments of error, all of which this Court has rejected. Because the ALJ's RFC finding contained all the limitations that the ALJ found credible and supported by substantial evidence, and any differences in the ALJ's ultimate RFC finding were harmless, the ALJ's reliance on the expert's testimony was proper. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

ORDER - 16

**D.     Plaintiff's testimony and lay witness evidence**

Plaintiff argues that the ALJ improperly discounted his testimony and the evidence from the lay witnesses. Where, as here, the ALJ did not find that the claimant was malingering, the ALJ must provide clear and convincing reasons to reject his testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ must provide specific, germane reasons for rejecting lay witness evidence. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006).

Plaintiff argues that the ALJ improperly rejected his testimony with broad conclusory statements about his lack of current health care, his apparent "lack of concern" about his physical impairments, and his failure to follow through on referrals for specialty care. Dkt. 16 at 16-17. But plaintiff does not address any of the ALJ's other reasons for discounting plaintiff's testimony. The ALJ found that plaintiff's primary interest in psychological care appeared to be secondary gain, engaging in treatment to comply with probation requirements, to obtain housing, or to complete paperwork for disability applications, but otherwise repeatedly failed to attend scheduled mental health appointments and required extensive contact to reengage in treatment. Tr. 27. The ALJ found that plaintiff's allegations of severely impaired social functioning and concentration were inconsistent with his activities, which included daily visits to a day center, participating in a knitting group, and reporting that he was "getting out and doing things" with a new roommate. Tr. 28. And the ALJ found that plaintiff's dishonest reporting of his substance use, as more thoroughly discussed above, compromised the reliability of his psychological reporting and the efficacy of his mental health care. Tr. 28-29. Plaintiff does not challenge the

validity of these reasons for discounting plaintiff's testimony. The court finds that these are clear and convincing reasons, supported by substantial evidence, to reject plaintiff's testimony.

Plaintiff argues that the ALJ erroneously rejected the opinions of caseworkers Olga Rublinetska and Matt Landis. Ms. Rublinetska and Mr. Landis completed function reports in August and October 2017. Tr. 394-401, 413-20. The ALJ gave these statements minimal weight. Tr. 31. The ALJ found that Mr. Landis's only reported familiarity with plaintiff was via case management meetings once or twice a month for two years, meaning that his statement was based wholly on plaintiff's reports rather than his own observations of plaintiff. *Id.* The ALJ further noted that Mr. Landis's meetings with plaintiff were not documented in the evidentiary record. *Id.* And the ALJ found that Mr. Landis's reports were inconsistent with the longitudinal examination findings, plaintiff's activities, and his lack of compliance with mental health care and minimal treatment for his alleged pain symptoms. *Id.* The ALJ found that Ms. Rublinetska's statement was also based solely on plaintiff's statements to her during case management meetings and, while these meetings were documented in the record, her statement was inconsistent with her examination findings. *Id.* The ALJ found that Ms. Rublinetska's opinion was, like Mr. Landis's, inconsistent with the other evidence in the record. *Id.*

Plaintiff argues that the case management meetings were a reasonably sufficient time to observe a person, and that the ALJ misrepresented the record in finding the case manager's statements inconsistent with other evidence. Dkt. 16 at 17. Lay witnesses who have the opportunity to observe the claimant's symptoms and daily activities are competent to testify as to his condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Here, the ALJ found that Ms. Rublinetska and Mr. Landis did not have the opportunity to observe plaintiff in his home or

other settings outside the context of their case management meetings. This was a germane reason to discount their opinions as to his daily functioning.

An ALJ may also discount lay witness evidence that in inconsistent with medical evidence or with the claimant's activities. *Carmickle v. Astrue*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Plaintiff's argument that the ALJ misconstrued the medical evidence and his activities repeats arguments that this court has already rejected as merely proposing alternative interpretations of the evidence. Because the ALJ reasonably interpreted the medical and other evidence and found the lay witness statements to be inconsistent with that evidence, the court cannot disturb that finding. The ALJ gave specific, germane reasons for discounting the lay witness statements.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 5th day of August, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge